Gary Minevich, Cal. (SBN #256136)
Minevich Law, APC
21700 Oxnard St, Ste. 950
Woodland Hills, CA 91367
Tel. 818.878.8740
Fax: 818.878.8745
Email: habeas@minevichlaw.com

Attorney for Petitioner

**DETAINED**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Dmitrii BORISENKO,<br><br>Petitioner,<br><br>v.<br><br>Thomas P. GILES, Acting Field Office Director of Los Angeles Office of Detention and Removal, U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security;<br><br>Markwayne MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY;<br><br>Todd BLANCHE, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;<br><br>JAMES JANECKA, in his official capacity as warden of the Adelanto ICE processing center;<br><br>Respondents. | Case No.<br><br>A-246-606-076<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**<br><br>Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief |

**PETITION FOR WRIT OF HABEAS CORPUS AND ORDER TO SHOW CAUSE WITHIN THREE DAYS; COMPLAINT FOR DECLARATORY RELIEF**

(Challenge to Unlawful Incarceration; Request for Declaratory and Injunctive Relief)

## STATEMENT OF FACTS

1. Petitioner Dmitrii Borisenko is a citizen of Russia. He entered the United States at or near San Luis, Arizona, on or about December 29, 2022, was apprehended by U.S. Customs and Border Protection, and on December 30, 2022 was paroled into the United States pursuant to INA § 212(d)(5) and released into the interior of the United States. See Exhibit "A" — Form I-385 Alien Booking Record, Form I-831 Continuation Page, and Parole Documentation.

2. As a condition of his parole, Petitioner was directed to report to the U.S. Immigration and Customs Enforcement ("ICE") office nearest his final destination within 60 days. See Exhibit "A." Petitioner did so: he reported to the ICE Los Angeles Field Office within 60 days of his release, and was placed on non-detained supervision. At that check-in, ICE issued Petitioner a written notice scheduling his next appointment for September 18, 2026. See Exhibit "E" — ICE Field Office Appointments Conirmations.

3. Petitioner fled Russia to escape persecution for his political opinion. As a result of that persecution, Petitioner timely submitted a Form I-589 Application for Asylum and for Withholding of Removal, which was received by U.S. Citizenship and Immigration Services ("USCIS") on December 8, 2023, within one year of his arrival in the United States (Receipt No. IOE5272973539). Petitioner's I-589 was filed on behalf of himself, his spouse Veronika Borisenko (A 246-606-077), and his minor daughter Milana Borisenko (A 246-606-078), who are derivative applicants. See Exhibit "B" — Form I-797C Notice of Action.

4. Petitioner appeared for his USCIS biometrics appointment at the Gardena Application Support Center on January 25, 2024, as scheduled. See Exhibit "C" — Form I-797C ASC Appointment Notice bearing biometrics processing stamp.

5. Petitioner has resided in the United States for approximately 3 years and 9 months.

6. Petitioner has continuously resided in Los Angeles County, California (first in North Hollywood, then in Hawthorne, and since February 9, 2026 in Torrance), since on or about December 30, 2022.

7. Prior to his detention, Petitioner held valid employment authorization: USCIS approved his Form I-765 Application for Employment Authorization (category C08) on June 14, 2024, valid from June 13, 2024 through June 12, 2029. See Exhibit "D" — Form I-797 EAD Approval Notice. Petitioner supports his family as a self-employed handyman and as a DoorDash delivery driver.

8. On September 21, 2026, Petitioner was arrested by ICE when he appeared, as instructed, for his scheduled ICE check-in appointment at the Los Angeles Field Office, 300 North Los Angeles Street — nearly four years after his entry and parole into the interior. ICE had originally scheduled the appointment for September 18, 2026, and itself rescheduled it to September 21, 2026. See Exhibit "E" — ICE Appointment Confirmations.

9. Petitioner is currently detained at the Adelanto Detention Facility in Adelanto, California.

10. Petitioner has no criminal history whatsoever. He has never been arrested, charged, or convicted of any offense, in the United States or elsewhere. Petitioner has consistently complied with U.S. law and maintained a strong record of personal responsibility.

11. Petitioner has appeared for every appointment DHS has ever scheduled for him: his initial ICE check-in within 60 days of his parole, his biometrics appointment on January 25, 2024, and his ICE check-in appointment on September 21, 2026 — the very appointment at which he

was arrested. See Exhibits "A," "C," and "E." Petitioner has demonstrated his intention to comply with all conditions of his release.

12. Petitioner's Form I-589 asylum application remains pending before USCIS. No Notice to Appear has been issued and Petitioner is not in removal proceedings before the Executive Office for Immigration Review.

13. Petitioner's spouse, Veronika Borisenko (A 246-606-077), and his minor daughter, Milana Borisenko (A 246-606-078), are present in the United States and are co-applicants (derivative beneficiaries) on Petitioner's Form I-589 Application for Asylum. Petitioner's immediate family ties in this country are among the strongest possible indicators that he will not abscond and will instead remain to pursue his asylum claim and be reunited with his wife and daughter.

14. Petitioner has now remained in ICE immigration detention since September 21, 2026, separated from his wife and daughter and unable to work to support them. His continued confinement has caused and continues to cause serious and irreparable harm.

15. Since his arrest, ICE has not set bond and has provided Petitioner no individualized custody determination of any kind. No neutral adjudicator has ever found — by any standard of proof — that Petitioner is a flight risk or a danger to the community.

16. Petitioner's arrest and detention are not premised on any changed circumstance. Petitioner was paroled into the United States in December 2022 after DHS itself determined that his release was appropriate, and for nearly four years thereafter he complied with every condition of that release, appeared at every scheduled appointment, timely filed for asylum, and obtained and maintained employment authorization. Nothing about Petitioner's circumstances changed between his parole and his re-detention except the passage of nearly four years of full compliance.

17. Respondents detained Petitioner not based on his personal circumstances or individualized facts, but pursuant to a policy of re-detaining paroled, compliant asylum applicants

when they appear for their scheduled check-in appointments — a practice that punishes precisely the compliance that conditions of release are designed to secure.

18. Because Petitioner was paroled and released into the interior of the United States, where he has been physically present for nearly four years, Petitioner has a protected liberty interest in his continued release, and his re-detention without any individualized determination or bond hearing cannot lawfully justify his continued civil detention.

19. Respondents now seek to keep Petitioner detained without a meaningful opportunity to seek a bond hearing. See 8 U.S.C. § 1225. Respondents do so based not on Petitioner's personal circumstances or individualized facts, but on a mechanical position that paroled entrants are categorically ineligible for bond, applied without regard to Petitioner's actual immigration history and years of compliance.

20. Respondents cannot evade due process requirements so easily. The U.S. Constitution requires Respondents to provide at least the rights available to Petitioner at the time he filed his application for relief.

21. The Constitution protects Petitioner — and every other person present in this country — from arbitrary deprivations of his liberty and guarantees him due process of law. The government's power over immigration is broad, but as the Supreme Court has declared, it "is subject to important constitutional limitations." *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). "Freedom from bodily restraint [has] always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

22. Petitioner seeks declaratory and injunctive relief to compel his immediate release from the immigration jail where he has been held by DHS since being unlawfully detained, without first being provided a constitutionally adequate hearing to determine whether his incarceration is justified.

23. Petitioner has a protected liberty interest in remaining out of custody. Because Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections

before he can be deprived of that interest. Respondents' re-detention of Petitioner — without any individualized custody determination, and despite DHS's own prior determination that his release on parole was appropriate — denied Petitioner of his due process rights.

24. Absent review in this Court, no other neutral adjudicator will examine Petitioner's rights: Respondents will continue — unchecked — to detain him unlawfully under 8 U.S.C. § 1225(b)(1), INA § 235(b)(1), without due process.

25. Petitioner respectfully petitions this Honorable Court for a writ of habeas corpus to release Petitioner from detention within 10 days.

26. Petitioner's continued detention is arbitrary and unlawful, and he requests that this Court order his immediate release from ICE custody.

## JURISDICTION

27. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

28. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

29. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

30. Federal District Courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness of their detention. *Zadvydas*, 533 U.S. at 687.

31. Federal courts also have federal question jurisdiction, through the Administrative Procedure Act ("APA"), to deem unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with law. 5 U.S.C. § 706(2)(A). APA claims are cognizable on habeas. 5 U.S.C. § 703 (judicial review of agency action under the APA may be

proceeded by any applicable form of legal action, including but not limited to habeas corpus). The APA affords a right of review to a person who is adversely affected or harmed by agency action.

## VENUE

32. Venue is proper in this district and division pursuant to 28 U.S.C. § 2241(c)(3) and 28 U.S.C. § 1391(b)(2) and (e)(1) because Petitioner is detained within this district at the Adelanto Detention Facility in Adelanto, California. Furthermore, a substantial part of the events or omissions giving rise to this action occurred and continue to occur within this district. No real property is involved in this action. 28 U.S.C. § 1391(e).

## CUSTODY AND REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

33. The Court must grant the petition for writ of habeas corpus or issue an order to show cause ("OSC") to the Respondents "forthwith" unless Petitioner is not entitled to relief. Under 28 U.S.C. § 2243, once an order to show cause issues, the respondent must ordinarily file a return within three days, unless the court for good cause allows additional time, not exceeding twenty days.

34. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963).

35. Petitioner is "in custody" for the purpose of 28 U.S.C. § 2241 because he was arrested by Respondents and remains in their legal and physical custody at the Adelanto Detention Facility in California. He is under Respondents' and their agents' direct control.

## PARTIES

36. Petitioner Dmitrii Borisenko is a citizen of Russia who has been in immigration detention since September 21, 2026, when he was arrested at his scheduled ICE check-in

appointment in Los Angeles, CA. ICE did not set bond and has provided no individualized custody determination. Petitioner has resided in the United States since 2022.

37. Respondent Thomas P. GILES is the Director of the Los Angeles Field Office of ICE's Enforcement and Removal Operations Division. As such, Thomas P. GILES is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

38. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security. He is responsible for the implementation and enforcement of the Immigration and Nationality Act (INA), and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is sued in his official capacity.

39. Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

40. Respondent Todd Blanche is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. He is sued in his official capacity.

41. Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

42. Respondent JAMES JANECKA is the Warden of the Adelanto ICE processing center, where Petitioner is detained. He has immediate physical custody of Petitioner. He is sued in his official capacity.

## LEGAL FRAMEWORK

## ICE'S CONTINUED DETENTION OF PETITIONER, WITHOUT REVIEWING HIS CUSTODY UNDER ICE POLICY, VIOLATES THE ADMINISTRATIVE PROCEDURE ACT AND DUE PROCESS.

43. ICE's long-standing policy is to release noncitizens immediately following a grant of asylum or other relief absent exceptional circumstances.

44. Under the *Accardi* doctrine, which originated in the context of an immigration case and has been developed through subsequent immigration case law, agencies are bound to follow their own rules that affect the fundamental rights of individuals, even self-imposed policies and processes that limit otherwise discretionary decisions. See *Accardi v. Shaughnessy*, 347 U.S. 260, 266 (1954) (holding that BIA must follow its own regulations in its exercise of discretion); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures … even where the internal procedures are possibly more rigorous than otherwise would be required.").

45. The requirement that an agency follows its own policies is not "limited to rules attaining the status of formal regulations." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991). Even an unpublished policy binds the agency if "an examination of the provision's language, its context, and any available extrinsic evidence" supports the conclusion that it is "mandatory rather than merely precatory." *Doe v. Hampton*, 566 F.2d 265, 281 (D.C. Cir. 1977); see also *Morton*, 415 U.S. at 235-36; *United States v. Heffner*, 420 F.2d 809, 813 (4th Cir. 1969).

46. When agencies fail to adhere to their own policies as required by *Accardi*, courts typically frame the violation as arbitrary, capricious, and contrary to law under the APA, see *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018), or as a due process violation, see *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) ("An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.").

47. Prejudice is generally presumed when an agency violates its own policy. See *Montilla*, 926 F.2d at 167 ("We hold that an alien claiming the INS has failed to adhere to its own regulations … is not required to make a showing of prejudice before he is entitled to relief. All that needs be shown is that the subject regulations were for the alien's benefit and that the INS failed to adhere to them."); *Heffner*, 420 F.2d at 813.

48. To remedy an *Accardi* violation, a court may direct the agency to properly apply its policy, see *Damus*, 313 F. Supp. 3d at 343, or a court may apply the policy itself and order relief consistent with the policy. See *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 657 (D. Mass. 2018) (scheduling bail hearing to review petitioners' custody under ICE's standards because "it would be particularly unfair to require that petitioners remain detained … while ICE attempts to remedy its failure").

49. Here, Petitioner falls squarely into this category: ICE — by re-detaining a paroled, fully compliant asylum applicant without any individualized custody review — has failed to act as required by its procedures and by controlling law, and Petitioner's continued detention requires this Court's intervention.

## CLAIMS FOR RELIEF

## GROUND ONE

## <u>VIOLATION OF FIFTH AMENDMENT RIGHT TO DUE PROCESS</u>

### Petitioner has the right to challenge the legality of his detention.

50. The allegations in the above paragraphs are realleged and incorporated herein.

51. Petitioner has due process rights to challenge his detention. *Zadvydas v. Davis*, 533 U.S. 678, 693, 695 (2001) (while noncitizens outside the United States' "geographic borders" lack constitutional protections, all "persons" within them are protected by the Due Process Clause, regardless of immigration status); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir.

2022) (though constitutional rights of citizens and noncitizens "are not coextensive," noncitizens are entitled to due process, including to challenge detention pending proceedings).

52. As the Ninth Circuit held, the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. *Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004), *abrogated on other grounds by Wilkie v. Robbins*, 551 U.S. 537 (2007); see also *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023). The Due Process Clause allows Petitioner to challenge his detention.

53. Petitioner challenges his deprivation of liberty and detention, not the adequacy of the procedures the immigration laws afford him with respect to admission. Petitioner is solely challenging his re-detention — effected when he appeared for his scheduled ICE check-in, without any individualized custody determination — and Respondents' refusal to provide any lawful process for his release. He is not bringing a constitutional claim with respect to the procedures governing his legal admission into the United States.

54. To the extent Respondents take the extraordinary position that Petitioner has no due process rights at all, that is unsupported by law and would have gruesome practical consequences: "If excludable [noncitizens] were not protected by even the substantive component of constitutional due process, … we do not see why the United States government could not torture or summarily execute them. … [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment." *Rosales-Garcia v. Holland*, 322 F.3d 386, 412 (6th Cir. 2003) (en banc); see also *Jean v. Nelson*, 472 U.S. 846, 874 (1985) (Marshall, J., dissenting). Thus, there is no question that Petitioner has the right to challenge the constitutionality of his prolonged detention under the Due Process Clause of the Fifth Amendment of the Constitution.

55. The relief Petitioner is entitled to is not limited to a bond hearing; Petitioner has a protected liberty interest in remaining out of custody. See, e.g., *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after his initial apprehension reflected a determination

by the government that he was neither a flight risk or a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless he no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

56. This Court has repeatedly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority, and has ordered the release of paroled asylum applicants re-detained at scheduled ICE check-ins without any individualized custody determination. See, e.g., *Gonchar v. Santacruz*, No. 2:26-cv-04399-PD, Dkt. 13 (C.D. Cal. May 28, 2026) (Donahue, M.J.) (holding that re-detention of a noncitizen paroled under 8 U.S.C. § 1182(d)(5), without a pre-deprivation hearing, violates due process; ordering release within 24 hours on prior conditions of release); *Khachaturian v. Giles*, No. 2:26-cv-09976-DFM, Dkt. 8 (C.D. Cal. Sept. 17, 2026) (McCormick, M.J.) (granting unopposed petition and ordering forthwith release of § 212(d)(5) parolee arrested at his scheduled Los Angeles Field Office check-in, restoring the status quo ante); *Luna Cardenas v. Giles*, No. 8:26-cv-02322-ACCV (C.D. Cal. Sept. 14, 2026) (Viramontes, M.J.) (detention without notice or hearing violated the Fifth Amendment; rejecting Respondents' position that petitioner was owed no more than a bond hearing; ordering release on pre-detention conditions); *Abdulaev v. Santacruz*, No. 2:26-cv-04767-AS, Dkt. 10 (C.D. Cal. June 4, 2026) (Sagar, M.J.) (entering judgment that petition is granted, following release memorandum decision and order, Dkt. 9); *Ruziev v. Janecka*, No. 5:26-cv-04766-AS, Dkt. 8 (C.D. Cal. Sept. 2, 2026) (Sagar, M.J.) (granting unopposed petition and ordering Respondents to release petitioner immediately under the same conditions to which he was subject prior to his detention).

57. Likewise, in *Liping Zhao v. Christopher J. Larose*, 26-cv-1285-JES-DDL, this Court granted a writ of habeas corpus releasing petitioner from custody to the conditions of his preexisting release on recognizance on due process grounds.

58. Furthermore, relief was granted in similar matters. See *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7-10 (N.D. Cal. 2025); *Pinchi*, 2025 WL 2084921, at *5; *Gonzalez Salazar*, 2025 WL 3063629, at *6; *Abdul Kadir v. Larose*, No. 25cv1045-LL-MMP, 2025 WL 2932654, at *6 (S.D. Cal. Oct. 15, 2025); *Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO (HC), 2025 WL 2495767, at *8 (E.D. Cal. Oct. 3, 2025).

59. ICE has violated Petitioner's due process rights by denying Petitioner a lawful, individualized bond determination. Specifically, ICE arrested Petitioner at his scheduled check-in appointment and has detained him ever since without setting bond and without any individualized finding — let alone one by clear and convincing evidence — that he is a flight risk or a danger, when in fact Petitioner was paroled into the United States on December 30, 2022 and had resided in the interior of the United States, in full compliance with all conditions of his release, for nearly four years before his ICE arrest.

60. As a remedy, this Court should conduct its own review of Petitioner's custody and order his release, recognizing that Petitioner was paroled and released into the interior and has a protected liberty interest in his continued release.

## GROUND TWO

## <u>VIOLATION OF 8 U.S.C. § 1231(a)(6) AND THE DUE PROCESS CLAUSE</u>

**Detention, whether styled as mandatory or discretionary, is subject to constitutional limits.**

61. The allegations in the above paragraphs are realleged and incorporated herein.

62. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

63. Petitioner has an interest in remaining with his community, reuniting with his wife and daughter, working, and continuing the process of seeking asylum. See *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his release on recognizance, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachment of normal life.").

64. The risk of an erroneous deprivation of Petitioner's liberty interest is high. Respondents re-detained Petitioner without any individualized custody determination at all. There is no individualized finding — let alone one supported by clear and convincing evidence — that Petitioner is a danger to the community or a flight risk. See *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017).

65. Petitioner has no criminal history of any kind — no arrests, no charges, and no convictions. He has had work authorization. "Once a noncitizen has been released, the law prohibits federal agents from rearresting [him] merely because he is subject to removal proceedings." *Saravia*, 280 F. Supp. 2d at 1760. "Rather, the federal agents must be able to present evidence of materially changed circumstances — namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Id.* Respondents have not presented — and cannot present — any such evidence.

66. The government's interest in detaining Petitioner is "low." See *Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019). Respondents cannot point to any legitimate interest served by Petitioner's continued detention, nor any burden on the government from releasing Petitioner to the conditions of supervision he faithfully observed for nearly four years.

67. Therefore, because Respondents have continued to detain Petitioner without any individualized custody determination or bond hearing — despite his parole, his nearly four years of continuous residence and full compliance, and DHS's own prior determination that his release was appropriate — Petitioner's detention violates the Due Process Clause and is unlawful. See, e.g., *Alegria Palma v. Larose*, No. 25-cv-1942 BJC (MMP), slip op. at 14 (S.D. Cal. Aug. 11, 2025); *Navarro Sanchez*, 2025 WL 2770629, at *5.

68. Petitioner's continued detention, without any lawful, individualized custody determination and without proper factual or legal foundation, denies Petitioner his due process rights. His continued detention violates 8 U.S.C. § 1231(a)(6), and he must be immediately released.

69. Furthermore, Petitioner is challenging his detention on constitutional grounds, not statutory grounds alone. Notwithstanding the fact that he is being detained pursuant to section 1225(b), Petitioner's detention is unequivocally subject to constitutional limits. The Supreme Court has not precluded noncitizens from bringing as-applied constitutional challenges to their mandatory detention. *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "did not explicitly address constitutionality arguments." Likewise, while *Demore v. Kim*, 538 U.S. 510 (2003), rejected a facial challenge to mandatory detention under § 1226(c), the Supreme Court has explicitly recognized the availability of judicial review over as-applied challenges to detention, including mandatory detention. See, e.g., *Nielsen v. Preap*, 586 U.S. 392, 420 (2019); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring). This Court has accordingly found constitutional limits to apply to immigration detention, irrespective of the underlying detention authority. See, e.g., *Gonchar*, No. 2:26-cv-04399-PD, Dkt. 13 (granting writ on procedural due process grounds and releasing § 1182(d)(5) parolee to his preexisting conditions of release); *Khachaturian*, No. 2:26-cv-09976-DFM, Dkt. 8 (same; forthwith release restoring status quo ante).

70. This Court should so hold as well.

## GROUND THREE

## ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

**Petitioner's ongoing detention — the re-detention of a paroled, fully compliant asylum applicant without any individualized custody determination — is arbitrary and capricious, and his immediate release is required.**

71. The allegations in the above paragraphs are realleged and incorporated herein.

72. Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

73. Respondents' detention of Petitioner is arbitrary and capricious because it rests on no individualized assessment whatsoever and is flatly contradicted by the undisputed record. Petitioner entered the United States on December 29, 2022, was paroled on December 30, 2022 pursuant to INA § 212(d)(5), was thereafter released into the interior, reported to ICE within 60 days as directed, resided continuously in Los Angeles County, complied with every check-in and reporting obligation, and was only arrested by ICE when he appeared, as instructed, at his scheduled September 21, 2026 check-in — nearly four years after his entry. His continued detention is therefore not in accordance with law, and he must be released.

74. The Ninth Circuit in *Singh* stressed that "it is improper to ask the individual to share equally with society the risk of error when the possible injury to the individual — deprivation of liberty — is so significant." See *Singh*, 638 F.3d at 1205; *Black*, 103 F.4th at 157-58 (observing that where "an individual's liberty is at stake, the Supreme Court has consistently used [a clear and convincing] evidentiary standard for continued detention"); *id.* at 159 (reiterating that the government bears the burden of meeting this standard even where an individual is detained pursuant to mandatory detention). This Court should likewise hold the government to its heavy

burden to justify Petitioner's continued civil detention — a burden Respondents cannot carry on this record — and order his release.

75. Moreover, any legitimate government interest in securing Petitioner's appearance at future proceedings can be fully served by alternatives to detention — as it was for nearly four years — including the conditions of his preexisting release. See, e.g., *Hernandez*, 872 F.3d at 994 ("If the government is setting monetary bonds to ensure appearance at future proceedings, there is no legitimate reason for it not to consider the individual's financial circumstances and alternative conditions of release.").

76. Thus, due process and Ninth Circuit precedent require that the government bear the burden of justifying Petitioner's ongoing and prolonged detention by clear and convincing evidence, on a lawful and accurate factual basis. Respondents have never attempted — and on this record cannot — carry that burden. The only adequate remedy is Petitioner's immediate release.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

C. Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1231(a)(6);

D. Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner;

E. Enjoin Respondents from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal;

F. Enjoin Respondents from re-detaining Petitioner without first following all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures;

G. Enjoin Respondents from removing Petitioner unless they provide written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; and

H. Grant any further relief this Court deems just and proper.

DATED 22nd day of September 2026

Respectfully submitted,

Gary Minevich, Esq.

Attorney for Petitioner